UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MICHAEL E. MONSON
Plaintiff

CA 05 005 S

vs. C.A. NO. 05-

ASML MASKTOOLS, INC.
Defendant

## VERIFIED COMPLAINT

Plaintiff brings this action seeking a judgment declaring his rights and other legal relations with respect to defendant in connection with defendant's demand that plaintiff make payment to defendant of the amount of $109,200.00 representing alleged "salary overadvances" or "draws against commissions". Plaintiff also seeks to recover from defendant commissions earned by plaintiff in calendar year 2004 in the amount of $30,248.00, as well as compensation earned by plaintiff since May, 2004 in the monthly amount of $3,033.33, presently totaling $27,299.97.

### Jurisdiction And Venue

The Court has jurisdiction over the subject of this action pursuant to 28 U.S.C. §1332(a), the matter in controversy exceeding the sum or value of $75,000.00, exclusive of interest and costs, and the parties being citizens of difference States. The Court also has jurisdiction over the subject of this action pursuant to 28 U.S.C. §2201(a), this being a case of actual controversy.

Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events and/or omissions giving rise to plaintiff's claims occurred in Rhode Island.

## Parties

1. Plaintiff, Michael E. Monson ("Monson"), is an individual residing at 15 Princess Pine Drive, East Greenwich, Kent County, Rhode Island.

2. Defendant, ASML MaskTools, Inc. ("MaskTools"), on information and belief, is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 4800 Great American Parkway, Suite 400, Santa Clara, California, and having offices in Arizona, Massachusetts, Rhode Island, and Taiwan. On information and belief, MaskTools is a wholly-owned subsidiary of ASM Lithography, Inc. ("AMS Litho"), which, on information and belief, is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 8555 South River Parkway, Tempe, Arizona.

## Facts

3. On or about October 18, 1999, Monson accepted MaskTools' offer of employment as Sales Account Manager for the East Coast area. A copy of the October 18, 1999 letter from C. Douglas Marsh, President of MaskTools, ("Marsh") to Monson offering the position of Sales Account Manager, including Monson's acceptance of that position on October 19, 1999, is attached hereto and incorporated herein by reference as Exhibit "A".

4. Prior to accepting the offer of employment with MaskTools, Monson was informed by Roger Caldwell, the Chief executive Officer of MaskTools, ("Caldwell"), that he was to be based in Santa Clara, California, that he would report to Caldwell and that he would be responsible for marketing and selling MaskTools' product line of software used for semiconductor manufacturing and Intellectual Property rights.

5. Prior to accepting the offer of employment with MaskTools, Monson also was informed by Marsh and Caldwell that ASM Litho intended to take MaskTools public and that employees of MaskTools would benefit from founder stock and the IPO of its stock.

6. At the time that the offer of employment was made by MaskTools to Monson and accepted by him, Monson was residing with his family in East Greenwich, Rhode Island. MaskTools agreed, therefore, that it would move Monson and his family to California.

7. On or about October 22, 1999, after Monson accepted MaskTools' offer of employment, he was informed by Caldwell that MaskTools had hired a Vice President of Sales, Art Launder ("Launder"), who would be based in MaskTools' office in Santa Clara, California, and that Monson would now report to Launder.

8. Monson was then asked by Caldwell to remain in Rhode Island and work out of his home as Eastern Regional Sales Manager, in which position his main responsibilities would be to develop and oversee all marketing and sales for MaskTools in North America east of the Rocky Mountains. In addition, Monson initially covered accounts in Oregon and Idaho.

9. Monson expressed concerns to Caldwell and Launder about remaining in Rhode Island because of the high costs of living, but was told by Caldwell and Launder that MaskTools would make certain that his remaining in Rhode Island and working out of his home would not present a financial hardship.

10. After approximately one month of employment with MaskTools, it became obvious to Monson that MaskTools' products were not ready for the marketplace and, therefore, that sales of those products were not going to be as strong as MaskTools expected and represented to Monson.

11. As a result of the inability of MaskTools' products to penetrate the marketplace, Monson was not receiving any commissions from sales. Monson approached Launder and informed him that because of the lack of commissions and the high cost of living in Rhode Island he was experiencing extreme financial hardship.

12. Launder responded to Monson's complaint of extreme financial hardship by informing Monson that MaskTools would be willing to provide Monson with a draw against future commissions, over and above his base salary, specifically the payment to Monson of the additional amount of $3,033.33 per month. Launder told Monson that this draw arrangement would be in place for six (6) months, beginning on December 1, 1999. Commissions earned would be reconciled against the draw payments, with any excess commissions to be paid to Monson by MaskTools or any shortfall to be paid to MaskTools by Monson. By letter dated November 30, 1999, Marsh confirmed the foregoing draw arrangement. A copy of that letter is attached hereto and incorporated herein by reference as Exhibit "B".

13. In June, 2000, Launder informed Monson that he had instructed MaskTools' payroll department to continue the draw arrangement through the end of 2000, so as to offset the financial hardship caused by the continuing inability of MaskTools' products to gain acceptance in the marketplace, with a resulting lack of commissions, and the high cost of living in Rhode Island.

14. In December, 2000, Launder informed Monson that the draws paid by MaskTools to Monson had exceeded the commissions earned by Monson. However, Launder further informed Monson that MaskTools had decided to forgive what otherwise would have been the balance to be paid by Monson to MaskTools.

15. In January, 2001, Launder informed Monson that he had instructed MaskTools' payroll department to continue making payment of the additional monthly amount of $3,033.33 to Monson in order to offset the lack of commissions and the high cost of Monson's living in Rhode Island. Launder further informed Monson that there would **not** be a reconciliation of these payments against commissions at the end of the year and that Monson would **not** be obligated to repay any of these additional monthly payments to MaskTools.

16. In 2001, on information and belief, ASM Litho began to incorporate MaskTools, which up to that time had operated as a wholly-owned subsidiary of ASM Litho, as a division of ASM Litho. In addition, on information and belief, ASM Litho decided not to take MaskTools public, but that MaskTools would become a division of ASM Litho.

17. In or about May, 2001, Launder left the employ of MaskTools and Monson was instructed to report to Dinesh Bettadapur, the new Chief Executive Officer, ("Bettadapur").

18. In calendar year 2001, in addition to his annual base salary, Monson received payment from MaskTools each month of the amount of $3,033.33, by means of direct deposit by MaskTools into Monson's bank account in Rhode Island, for a total of $36,399.96 in additional compensation.

19. At no time in calendar years 2001, 2002 or 2003 was Monson informed by MaskTools that he had any obligation whatsoever to repay any portion of the $36,399.96 in additional compensation which he received from MaskTools in calendar year 2001.

20. In calendar year 2002, in addition to his annual base salary, Monson received payment from MaskTools each month of the amount of $3,033.33, by means of direct deposit by MaskTools into Monson's bank account in Rhode Island, for a total of $36,399.96 in additional compensation.

21. At no time in calendar years 2002 or 2003 was Monson informed by MaskTools that he had any obligation whatsoever to repay any portion of the $36,399.96 in additional compensation which he received from MaskTools in calendar year 2002.

22. In calendar year 2003, in addition to his annual base salary, Monson received payment from MaskTools each month of the amount of $3,033.33, by means of direct deposit by MaskTools into Monson's bank account in Rhode Island, for a total of $36,399.96 in additional compensation.

23. At no time in calendar year 2003 was Monson informed by MaskTools that he had any obligation whatsoever to repay any portion of the $36,399.96 in additional compensation which he received from MaskTools in calendar year 2003.

24. In calendar year 2004, in addition to his annual base salary, Monson received payment from MaskTools in the months of January, February, March, and April of the amount of $3,033.33, by means of direct deposit by MaskTools into Monson's bank account in Rhode Island, for a total of $12,133.32 in additional compensation.

25. At no time in January, February, or March, 2004 was Monson informed by MaskTools that he had any obligation to repay any portion of the $12,133.32 in additional compensation which he received from MaskTools in January, February, March, and April, 2004.

26. In March, 2004, on information and belief, ASM Litho entered into a five (5) year agreement with Cadance, Inc., a major competitor of MaskTools with an extensive marketing and sales department, which began to provide marketing and sales support for MaskTools' products worldwide. In addition, ASM Litho's sales personnel began selling MaskTools' products.

27. On or about April, 2004, Bettadapur contacted Monson by telephone and informed Monson that, after forty (40) months of additional compensation payments of $3,033.33 each by MaskTools to Monson, MaskTools' finance department had just become aware of the payment of that additional monthly compensation, and that there was no record of why those payments continued to be made to Monson. Bettadapur then demanded that Monson repay MaskTools in one lump sum the amount of $109,200.00, representing the additional monthly compensation received by Monson from MaskTools from January, 2001 through December, 2003.

28. Monson protested to Bettadapur that he did not have any obligation to repay any amount of the additional monthly compensation received from MaskTools, as demanded by Bettedapur.

29. MaskTools has continued to insist that Monson repay MaskTools the amount of $109,200.00, representing the additional monthly compensation received by Monson from MaskTools from January, 2001 through December, 2003. In October, 2004, MaskTools requested that Monson and his wife execute a Promissory Note and

an Assignment Of Wages in connection with the demanded repayment.

30. Monson maintains that he does not have any obligation to repay any amount of the additional monthly compensation received from MaskTools as demanded by MaskTools, and Monson and his wife have refused to execute the proposed Promissory Note and Assignment Of Wages delivered to them by MaskTools.

31. MaskTools, through its attorneys, has made demand upon Monson and has threatened to commence legal action against him seeking to recover the amount of $109,200.00 in additional monthly compensation received by Monson from MaskTools from January, 2001 through December, 2003.

**Count I**
**(For Declaratory Judgment)**

32. Monson realleges, reavers, and incorporates herein by reference the allegations contained in paragraphs 1 through 31, above.

33. There is a case of actual controversy, which is within the jurisdiction of the Court, between Monson and MaskTools regarding MaskTools' demand that Monson repay it the amount of $109,200.00 representing what MaskTools has alleged were "salary overadvances" or "draws against commissions" made by MaskTools to Monson in 2001, 2002, and 2003.

**WHEREFORE**, Monson respectfully requests that the Court enter judgment in his favor:

1. Declaring that the monthly payments in the amount of $3,033.33 received by Monson from MaskTools from January, 2001 through April, 2004 constituted additional monthly compensation, not "salary overadvances" or "draws against commissions";

2. Declaring that Monson does not have any obligation to repay to MaskTools any amount of the additional monthly compensation received by him from MaskTools from January, 2001 through April 2004; and

3. Providing such other and further relief as it deems fair and just.

**<u>Count II</u>**
**(For Breach Of Contract)**

34. Monson realleges, reavers, and incorporates herein by reference the allegations contained in paragraphs 1 through 33, above.

35. Monson has been and continues to be employed by MaskTools as Eastern Regional Sales Manager, based at his home office in East Greenwich, Rhode Island. Monson has performed and continues to perform all of his duties and responsibilities as Eastern Regional Sales Manager for MaskTools.

36. While MaskTools has paid Monson his annual base salary during calendar year 2004, MaskTools has failed, neglected, and refused, and continues to refuse in spite of demand therefor, to make payments to Monson of his additional monthly compensation in the amount of $3,033.33 for the months of May, June, July, August, September, October, November, and December, 2004 and January, 2005.

37. The failure, neglect, and refusal by MaskTools to make payment of the additional monthly compensation to Monson constitutes an ongoing breach of contract by MaskTools.

38. MaskTools owes Monson additional monthly compensation in the amount of $3,033.33 for the months of May, June, July, August, September, October, November, and December, 2004 and January, 2005, for a total of $27,299.97.

39. There is a complete absence of a justiciable issue of either law or fact with respect to Monson's claims for breach of contract in connection with the additional monthly compensation owed to him by MaskTools.

**WHEREFORE**, Monson respectfully requests that the Court enter judgment in his favor against MaskTools:

1. in an amount equal to all unpaid monthly additional compensation at the rate of $3,033.33, which as of the date of this Verified Complaint is in the amount of $27,299.97, together with interest and costs;

2. awarding Monson his reasonable attorneys' fees pursuant to Rhode Island General Laws §9-1-45; and

3. for such other and further relief as it deems fair and just.

**<u>Count III</u>**
**(For Services Rendered)**

40. Monson realleges, reavers, and incorporates herein by reference the allegations contained in paragraphs 1 through 39, above.

41. MaskTools owes Monson additional monthly compensation in the amount of $3,033.33 for the months of May, June, July, August, September, October, November, and December, 2004 and January, 2005, for a total of $27,299.97 for services rendered by Monson for an on behalf of MaskTools.

**WHEREFORE**, Monson respectfully requests that the Court enter judgment in his favor against MaskTools:

1. in an amount equal to all unpaid monthly additional compensation at the rate of $3,033.33, which as of the date of this Verified Complaint is in the amount of $27,299.97, together with interest and costs;

2. awarding Monson his reasonable attorneys' fees pursuant to Rhode Island General Laws §9-1-45; and

3. for such other and further relief as it deems fair and just.

**Count IV**
**(For Breach Of Contract)**

42. Monson realleges, reavers, and incorporates herein by reference the allegations contained in paragraphs 1 through 41, above.

43. Monson has earned commissions in calendar year 2004 in the total amount of $30,248.00 in his capacity as Eastern Regional Sales Manager for MaskTools.

44. MaskTools has failed, neglected, and refused, and continues to refuse in spite of demand therefor, to make payment to Monson of the commissions earned by Monson in calendar year 2004.

45. The failure, neglect, and refusal by MaskTools to make payment to Monson of the commissions earned by him in calendar year 2004 constitutes a breach of contract by MaskTools.

46. MaskTools owes Monson the amount of $30,248.00 for commissions earned by him in calendar year 2004.

47. There is a complete absence of a justiciable issue of either law or fact with respect to Monson's claims for breach of contract in connection with the commissions owed to him by MaskTools.

**WHEREFORE**, Monson respectfully requests that the Court enter judgment in his favor against MaskTools:

1. in the amount of $30,248.00, together with interest and costs;

2. awarding Monson his reasonable attorneys' fees pursuant to Rhode Island General Laws, §9-1-45; and

3. for such other and further relief as it deems fair and just.

**Count V**
**(On Account Annexed)**

48. Monson realleges, reavers, and incorporates herein by reference the allegations contained in paragraphs 1 through 47, above.

49. MaskTools owes Monson the amount of $30,248.00 for commissions in accordance with the account annexed hereto and incorporated herein by reference as Exhibit "C".

**WHEREFORE**, Monson respectfully requests that the Court enter judgment in his favor against MaskTools:

1. in the amount of $30,248.00, together with interest and costs;

2. awarding Monson his reasonable attorneys' fees pursuant to Rhode Island General Laws, §9-1-45; and

3. for such other and further relief as it deems fair and just.

**VERIFICATION**

I, Michael E. Monson, hereby verify that I have read the foregoing Verified Complaint and that the allegations contained therein are true and accurate, except those allegations based on information and belief and as to those I believe them to be true and accurate.

Michael E. Monson

STATE OF RHODE ISLAND
Providence COUNTY

January 7, 2005

Then personally appeared before me the above-named Michael E. Monson and swore that the allegations contained in the foregoing Verified Complaint are true and accurate, except those allegations based on information and belief and as to those he believes them to be true and accurate.

Notary Public
My Commission Expires: 9/21/06

**Demand For Jury Trial**

Plaintiff hereby demands a trial by jury of all issues so triable.

Attorney for Plaintiff,

Stephen J. Reid, Jr. #2811
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903
(401) 831-8900
(401) 751-7542 (fax)

Dated: January 7, 2005

F:\DOCS\SJR\Monson\Complaint

ASML

ASM Lithography
8555 South River Parkway
Tempe, Arizona 85284
Phone
(480) 383-4422
Fax
(480) 383-3986

October 18, 1999

Michael E. Monson
15 Princess Pine Drive
East Greenwich, RI 02818

Dear Michael:

We are pleased to formally offer you the position of Sales Account Manager for the East Coast area of ASML MaskTools, Inc., a wholly owned subsidiary of ASM Lithography, Inc.

This position will provide you with an annual salary of $85,000 and a sales bonus plan with a target payout of 88.24% of base salary for a total target compensation of $160,000. Sales bonus targets will be determined by ASML MaskTools Inc. President.

As a Sales Account Manager, you will have access to either a company – leased vehicle or a monthly automobile allowance of $530.00 (gross).

As a condition of employment, it is imperative that there is nothing in your driving record to preclude you from being insurable under the ASML umbrella car/liability insurance policy or from obtaining a valid driver license.

You will be eligible to participate in the ASML Employee Benefits package as outlined in the enclosed Employee Benefits Summary, including participation in the ASML Employee Retirement 401 (k) Plan. Also, you will be eligible to participate in the ASML 2000 Profit Sharing Program and could receive a payment up to 6% of your base salary based on ASML total company profitability in 2000 and ASML MaskTools, Inc. performance targets. Payout would occur in February 2001. Any profit sharing you receive would give you an opportunity to purchase individual stock options in accordance with the ASML employee stock option purchase program.

ASML MaskTools requires all individuals who have received conditional offers of employment to undergo a medical examination at company expense. The company's employment offer to you is conditional on the satisfactory outcome of the medical examination.

EXHIBIT "A"

Michael E. Monson
Page Two
October 18, 1999

In addition, all prospective employees must undergo and pass a drug test to be considered for employment at ASML MaskTools. Individuals who fail the test will no longer be eligible for employment.

Enclosed, you will find our Benefits Summary Policy. Should you have any questions, please do not hesitate to contact Mary Ann Provencio, Human Resources Representative or myself.

Sincerely,

C. Douglas Marsh

C. Douglas Marsh
President,
ASML MaskTools, Inc.

I hereby accept the above-referenced position and agree to abide by the terms of employment outlined in the offer.

Signature

19 Oct 1999
Date

ASML

ASM Lithography
8555 South River Parkway
Tempe, Arizona 85284
Phone
(480) 383-4422
Fax
(480) 383-3986

November 30, 1999

Mr. Michael E. Monson
15 Princess Pine Drive
East Greenwich, RI 02818

Dear Michael

This letter is an addendum to ASML MaskTools' offer of employment dated October 18, 1999.

Pursuant to your discussion with Roger Caldwell, Vice President of ASML MaskTools, approval has been granted by C. Douglas Marsh, President of ASML MaskTools to provide you a monthly draw, outside of ASML MaskTools' established Compensation Package. The gross amount of $3,033.33/month will be paid for 6 months beginning December 1, 1999.

Should you decide to leave the employment of ASML MaskTool, you will be required to pay in full all outstanding amounts due immediately upon submittal of your resignation.

Sincerely,

C. Douglas Marsh

C. Douglas Marsh
President, ASML MaskTools

CC: Roger Caldwell

EXHIBIT "B"

**MICHEL E. MONSON**
**COMMISSIONS EARNED**

| DATE | CUSTOMER | SALES | COMMISSION |
|---|---|---|---|
| April, 2004 | IBM | $100,000.00 | $4,000.00 |
| May, 2004 | NSC | $313,000.00 | $12,520.00 |
| May, 2004 | NSC | $43,200.00 | $1,728.00 |
| December, 2004 | Freescale | $300,000.00 | $12,000.00 |
| | | **Total:** | **$30,248.00** |

EXHIBIT "C"