UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **MICHAEL E. MONSON**<br>**Plaintiff**<br>**vs.**<br>**ASML MASKTOOLS, INC.**<br>**Defendant** | : | **C.A. No: 05-CV-5 S** |
| **ASML MASKTOOLS, INC.**<br>**Counterclaimant**<br>**vs.**<br>**MICHAEL E. MONSON**<br>**Counterdefendant** | : | |

**ANSWER AND COUNTERCLAIM**

Defendant, ASML MaskTools, Inc. ("ASML"), submits this Answer and Counterclaim in response to Plaintiff's Complaint:

**Jurisdiction and Venue**

ASML admits that this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) and that Venue is proper under 28 U.S.C. § 2201(a). ASML denies the remaining allegations in this introductory paragraph.

**PARTIES**

1. ASML admits the allegations of Paragraph 1.

2. ASML admits that ASML MaskTools, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 4800

3

Great American Parkway, Suite 400, Santa Clara, California. ASML denies the remaining allegations of Paragraph 2.

**FACTS**

3. ASML admits the allegations of Paragraph 3.

4. ASML lacks sufficient information to form a belief as to the truth or the falsity of the allegations in Paragraph 4 and therefore denies it.

5. ASML lacks sufficient information to form a belief as to the truth or the falsity of the allegations in Paragraph 5 and therefore denies it.

6. ASML admits that at the time the offer of employment was made to Plaintiff he resided in East Greenwich, Rhode Island. ASML denies the remaining allegations of Paragraph 6. ASML affirmatively alleges that ASML and Plaintiff discussed Plaintiff's possible move to California and that the parties decided that Plaintiff would remain in Rhode Island to provide better support for ASML's East Coast customers.

7. ASML admits the allegations of Paragraph 7.

8. ASML admits the allegations of Paragraph 8.

9. ASML denies the allegations of Paragraph 9.

10. ASML lacks sufficient information to form a belief as to the truth or the falsity of the allegations in Paragraph 10 and therefore denies it.

11. ASML denies the allegations of Paragraph 11. ASML affirmatively alleges that Plaintiff expressed to Roger Caldwell that, relying on the income and bonus he received from his previous employer, Plaintiff had entered into certain financial obligations, and that he could not meet these obligations based on his monthly salary with ASML.

12. ASML admits the allegations of Paragraph 12.

13. ASML admits that Launder instructed ASML's payroll department to continue the draw arrangement through the end of 2000 but denies the remaining allegations of Paragraph 13.

14. ASML admits the allegations of Paragraph 14.

15. ASML denies the allegations of Paragraph 15.

16. ASML denies the allegations of Paragraph 16.

17. ASML admits the allegations of Paragraph 17.

18. ASML admits that in the calendar year 2001 Plaintiff received, in addition to his annual salary, monthly payments from ASML of $3,033.33, by means of direct deposit into Plaintiff's bank account, for a total of $36,399.96. ASML denies that these payments were additional compensation. ASML affirmatively alleges that these monthly payments were draws against commission that were erroneously continued past December, 2000 due to an internal administrative oversight.

19. ASML admits that ASML did not inform Plaintiff in the calendar years 2001, 2002, or 2003 that he had an obligation to repay the $36, 399.96 which he received in the calendar year 2001. ASML denies that this amount was additional compensation. ASML affirmatively alleges that Plaintiff was fully aware that he should not have been receiving monthly advances beyond December, 2000 and needed to repay such advances.

20. ASML admits that in the calendar year 2002 Plaintiff received, in addition to his annual salary, monthly payments from ASML of $3,033.33, by means of direct deposit into Plaintiff's bank account, for a total of $36,399.96. ASML denies that these payments were additional compensation. ASML affirmatively alleges that these monthly payments were draws against commission that were erroneously continued past December, 2000 due to an internal administrative oversight.

21. ASML admits that ASML did not inform Plaintiff in the calendar years 2002 or 2003 that he had an obligation to repay the $36, 399.96 which he received in the calendar year

2002. ASML denies that this amount was additional compensation. ASML affirmatively alleges that Plaintiff was fully aware that he should not have been receiving monthly advances beyond December, 2000 and needed to repay such advances.

22. ASML admits that in the calendar year 2003 Plaintiff received, in addition to his annual salary, monthly payments from ASML of $3,033.33, by means of direct deposit into Plaintiff's bank account, for a total of $36,399.96. ASML denies that these payments were additional compensation. ASML affirmatively alleges that these monthly payments were draws against commission that were erroneously continued past December, 2000 due to an internal administrative oversight.

23. ASML admits that ASML did not inform Plaintiff in the calendar year 2003 that he had an obligation to repay the $36,399.96 which he received in the calendar year 2003. ASML denies that this amount was additional compensation. ASML affirmatively alleges that Plaintiff was fully aware that he should not have been receiving monthly advances beyond December, 2000 and needed to repay such advances.

24. ASML admits that in the calendar year 2004 Plaintiff received, in addition to his annual salary, payments of $3,033.33 from ASML in the months of January, February, March and April, by means of direct deposit into Plaintiff's bank account, for a total of $12,133.32. ASML denies that these payments were additional compensation. ASML affirmatively alleges that these monthly payments were draws against commission that were erroneously continued past December, 2000 due to an internal administrative oversight.

25. ASML admits that Plaintiff was not informed in January, February, or March, 2004 that he had an obligation to repay the $12,133.32 he received in January, February, March, and April 2004. ASML denies the remaining allegations of paragraph 25. ASML affirmatively

alleges that Plaintiff was aware that he should not have been receiving monthly advances beyond December, 2000 and needed to repay such advances.

26. ASML denies the allegations of Paragraph 26.

27. ASML admits that in April, 2004 Bettadapur contacted Plaintiff and informed him that ASML had discovered that for forty (40) months Plaintiff had been receiving additional monthly payments of $3,033.33. ASML denies the remaining allegations of Paragraph 27. ASML affirmatively alleges that Plaintiff acknowledged that he knew that the payments were an erroneous continuation of the draws against commission provided to him in the year 2000. Plaintiff also acknowledged his understanding of the nature of the draws and accepted the fact that ASML was within its rights to recover the payments. ASML further alleges that in a follow-up meeting Bettadapur and Plaintiff agreed on the terms of repayment and these terms were later incorporated into the Promissory Note and Assignment of Wages which ASML sent to Monson.

28. ASML denies the allegations of Paragraph 28.

29. ASML denies the allegations of Paragraph 29. ASML affirmatively alleges that Monson was asked to repay ASML for the advances received from January 1, 2001 through April 30, 2004. ASML has offered Monson compromise amounts, but Monson has rejected all such offers.

30. ASML admits that Plaintiff and his wife have refused to execute the proposed Promissory Note and Assignment of Wages offered by ASML. ASML affirmatively alleges that Plaintiff has reneged on his previous assent to repay all amounts.

31. ASML admits the allegations of Paragraph 31

**Count I**

**(For Declaratory Judgment)**

32. ASML incorporates its responses to the prior allegations in responding to Paragraph 32.

33. ASML admits the allegations of Paragraph 33.

**Count II**

**(Breach of Contract)**

34. ASML incorporates its responses to the prior allegations in responding to Paragraph 34.

35. ASML admits that Monson is still employed by MaskTools from his home office in Rhode Island, but denies the remaining allegations of Paragraph 35.

36. ASML admits that it has paid Plaintiff his annual base salary during the calendar year 2004 and that it has refused to pay any "additional monthly compensation" to Plaintiff since April 2004. ASML denies the remaining allegations of Paragraph 36. ASML affirmatively alleges that it has rightfully refused to continue the monthly draws against commissions.

37. ASML denies the allegations of Paragraph 37.

38. ASML denies the allegations of Paragraph 38.

39. ASML denies the allegations of Paragraph 39.

**Count III**

**(For Services Rendered)**

40. ASML incorporates its responses to the prior allegations in responding to Paragraph 40.

41. ASML denies the allegations of Paragraph 41.

**Count IV**

**(For Breach of Contract)**

42. ASML incorporates its responses to the prior allegations in responding to Paragraph 42.

43. ASML denies the allegations of Paragraph 43.

44. ASML denies the allegations of Paragraph 44. ASML affirmatively alleges that Plaintiff's 2004 commissions are to be offset against the salary draws Plaintiff received.

45. ASML denies the allegations of Paragraph 45.

46. ASML denies the allegations of Paragraph 46.

47. ASML denies the allegations of Paragraph 47.

**Count V**

**(On Account Annexed)**

48. ASML incorporates its responses to the prior allegations in responding to Paragraph 48.

49. ASML denies the allegations of Paragraph 49.

**Affirmative Defenses**

1. ASML denies each and every allegation in the Complaint not specifically admitted herein.

2. ASML affirms that the Complaint fails to state a claim upon which relief may be granted.

3. Plaintiff's claims fail for lack of consideration.

4. Plaintiffs alleges an agreement which is not to be performed within the space of one year from the making thereof. As such, his claims violate Rhode Island's Statue of Frauds, § 9-1-4.

**Prayer for Relief**

**WHEREFORE**, ASML respectfully requests that this Court:

A. Dismiss the Complaint entirely and with prejudice.

B. Award its reasonable attorneys' fees pursuant to Rhode Island General Laws, § 9-1-45; and

C. Award any other relief appropriate under the circumstances.

**COUNTERCLAIM**

Counterclaimant ASML MaskTools, Inc., by and through undersigned counsel, for its counterclaim against Michael E. Monson alleges as follows:

**PARTIES**

1. ASML MaskTools, Inc. ("ASML") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Santa Clara, California.

2. Upon information and belief, Michel E. Monson ("Monson"), is an individual residing at 15 Princess Pine Drive, East Greenwich, Kent County, Rhode Island.

**FACTS**

3. On or about October 21, 1999, Monson began his employment with ASML.

4. On November 10, 1999, Monson sent an electronic-mail message to ASML's Chief Executive Officer, Roger Caldwell ("Caldwell), and ASML's Vice President of Sales, Art

Launder ("Launder"), explaining that, prior to his employment with ASML, Monson miscalculated the extent of the financial obligations he entered into and his ability to meet these obligations. A copy of Monson's electronic-mail message to Caldwell and Launder is attached hereto and incorporated herein by reference as Exhibit "A".

5. Monson proposed that ASML advance him $3,033.33 per month as a draw against his expected commissions. He specifically proposed that ASML pay him $3,033.33 per month from his expected commissions. According to Monson's proposal, the $9, 099.99 in advances that he would receive quarterly would then be reconciled to the quarterly allotment that he would be scheduled to receive in commissions. In the event that the $9,099.99 advance was more than Monson's quarterly commission bonus, Monson agreed to pay ASML the difference.

6. ASML accepted Monson's request and agreed to make $3,033.33 monthly advances to Monson for six (6) months. ASML began to make the advances in January, 2000.

7. In June, 2000, the six (6) month period expired and ASML discontinued the monthly advances.

8. In October, 2000, Monson requested that the advance payments be re-instated and ASML agreed to provide the monthly advances to Monson retroactively from July, 2000 through December, 2000.

9. At the end of the 2000 calendar year, Monson's monthly advances were reconciled against his commission payment.

10. Due to ASML's internal administrative oversight, the monthly automatic deposits of the advances were not stopped and Monson continued to receive advances from January, 2001 through April, 2004 which were not reconciled or otherwise repaid by Monson.

11. Monson took no action to repay these advances or have them offset against his commissions once these commissions increased. Nor did Monson notify anyone at ASML that the advances were continuing despite his understanding that they were to end in December, 2000.

12. At no time did Monson or any representative of ASML agree to change the nature of the monthly advances or release Monson from his obligation to repay the advances.

13. In April, 2004, ASML discovered that the advances made to Monson continued from January 2001 through April 2004, and had not been reconciled with his commission and Monson had not otherwise repaid these advancements.

14. On or about April, 2004, ASML's Chief Executive Officer, Dinesh Bettadapur ("Bettadapur"), discussed with Monson the overpayment caused by the monthly advances and the discontinuance of such advances.

15. Monson admitted to Bettadapur that he understood the nature of the advances and accepted that ASML was within its rights to recover the amounts that were advanced.

16. Monson and Bettadapur agreed that Monson would repay the advances he received after December, 2000. During a follow-up meeting Monson and Bettadapur agreed on the terms of repayment and these terms were later incorporated into the Promissory Note and Assignment of Wages which ASML sent to Monson.

17. On October 24, 2004, ASML sent Monson the Promissory Note and Assignment of Wages setting forth the agreed upon terms for repayment of the advances. ASML's proposal included an offer to forgive $21,200.00 of the overpayments, as well as, any interest due under the Promissory Note.

18. Monson rejected the terms in the Promissory Note and Assignment of Wages and reneged on his agreement to repay ASML.

**Count I**

**(Unjust Enrichment)**

19. ASML realleges, reavers, and incorporates herein by reference the allegations contained in Paragraphs 1-18 above.

20. Monson has received $121,333.20 in commission advances from ASML.

21. Monson has not complied with his obligation to repay the above advances.

22. Monsoon will be unjustly enriched to the extent he will be permitted to avoid repaying ASML for these advances.

**WHEREFORE**, ASML respectfully requests that the Court enter judgment in its favor against Monson:

1. In an amount equal to the overpayment of $121,333.20, together with interest and costs;

2. Awarding ASML its reasonable attorneys' fees pursuant to Rhode Island General Laws, § 9-1-45; and

3. For such other and further relief and the Court deems fair and just.

**Count II**

**(Breach of Oral Contract)**

23. ASML realleges, reavers, and incorporates herein by reference the allegations contained in Paragraphs 1-23 above.

24. Monson agreed to repay the advances he received from January, 2001 through April, 2004 during the conversation he had with Bettadapur in April, 2004.

25. Monson has breached that promise by refusing to repay the amounts due.

**WHEREFORE**, ASML respectfully requests that the Court enter judgment in its favor against Monson:

1. In an amount equal to the overpayment of $121,333.20, together with interest and costs;

2. Awarding ASML its reasonable attorneys' fees pursuant to Rhode Island General Laws, § 9-1-45; and

3. Providing such other and further relief as the Court deems fair and just.

**RESPECTFULLY SUBMITTED** this ____ day of ______________.

**ASML MASKTOOLS, INC.**

**By Its Attorneys,**

Stacey P. Nakasian, Esq. (#5069)
Ralph N. Gaboury, Edq. (#6638)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700
(401) 455-0701-Fax

Of Counsel:

David Thorpe Barton, Esq.
Luis F. Ramirez, Esq.
Quarles & Brady Streich Lang LLP
One Renaissance Square
Two North Central Avenue
Phoenix, AZ 85004
602-229-5200
602-229-5690-Fax

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4 day of February, 2005, I mailed a copy of the within Answer and Counterclaim to the following:

Stephen J. Reid, Jr.
Blish & Cavanagh
30 Exchange Terrace
Providence, RI 02903

**Subject:** Proposed payment of monthly commission
**Date:** Wed, 10 Nov 1999 15:50:53 -0500
**From:** Mike Monson <Mike.Monson@masktools.com>
**Organization:** ASML MaskTools Inc.
**To:** Roger Caldwell <rfc@masktools.com>
**CC:** "Launder, Art" <art@masktools.com>

Day two verbally approved.

"A"

Roger,

You asked me to put in writing a proposal regarding the monthly payment of my annual commission. I think a little background information would be helpful so you know why I am requesting you to consider this proposal.

When I moved to Rhode Island to work for Olin, my monthly salary was $10,000 ($120,000 annually). With that salary to work with, I made some financial decision and entered into financial obligation based upon that income. I did not include the bonus that I was paid ($15,000 to $20,000 per year) into the calculations of my financial obligation, primary of which is my home mortgage.

Now my position at MaskTools has a monthly salary of 7,083.33 ($85,000 annually). My commission, based upon the offer letter that I received and conversations that you and I have had, should be approximately $55,000 to $75,000 annually, depending on performance and the financial goals that are attained. This would be a quarterly payment of $13,750 to $18,750 or if broken down by month, it would be $4,583.33 to $6,250 monthly. My proposal is to pay me $3,033.33 per month from the commission and then reconcile the $9,099.99 that I would receive quarterly to the quarterly allotment that I would have received. The $9,099.99 is 66% of the lower commission payout and 49% of the higher commission payout, giving a margin of cushion in the event that sales were to fall off and the commission was not as high as stated in the offer letter. If the $9,099.99 is less than the quarterly bonus due to me, then I would receive the balance. If the $9,099.99 is more than the quarterly bonus that I should receive, then I would pay ASML MaskTools the difference. (I chose $3,033.33 per month because this is $36,400 annual which equals $1,400 every two week pay period - a nice round number).

This proposal would bring my monthly salary to $10,116.66, similar to which I was making when I moved to Rhode Island and would ease the financial stress that I now feel.

Please feel free in contacting me regarding this proposal and let me know what I need to do if you agree with this that I am requesting.

Thanks for you help in this matter.

Mike

ASML0050